

I N T H E

# Court of Appeals of Indiana



FILED
Aug 21 2024, 9:07 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

V.L. Davis Properties,

*Appellant-Defendant,*

v.

Deutsche Bank National Trust Company, as Indenture Trustee, on Behalf of the holders of the Accredited Mortgage Loan Trust 2004-3 Asset Backed Notes,

*Appellee-Plaintiff*

---

August 21, 2024

Court of Appeals Case No.
23A-MF-2224

Appeal from the Jennings Superior Court

The Honorable Gary L. Smith, Judge

Trial Court Cause No.
40D01-2104-MF-4

---

**Opinion by Judge May**
Judges Vaidik and Kenworthy concur.

**May, Judge.**

[1] V.L. Davis Properties ("Davis") appeals following the trial court's denial of the motion to correct error that Davis filed after the trial court granted summary judgment in favor of Deutsche Bank National Trust Company ("Bank") and entered a decree of foreclosure related to a property on Blossom Court in North Vernon, Indiana ("Blossom Court Property"). Davis presents one issue for our review, which we revise and restate as whether a prior foreclosure action extinguished Bank's interest in the Blossom Court Property when Bank's agent was not served in that prior action. We affirm.

## Facts and Procedural History

[2] On July 30, 2004, Accredited Home Lenders, Inc. ("AHL") lent $83,600.00 to Dan Dulong and Robin K. Townsley Dulong ("the Dulongs") for the purchase of the Blossom Court Property. The Dulongs executed an adjustable rate note secured by a mortgage in which the Dulongs agreed to repay AHL the amount of the loan plus interest. The adjustable rate note also gave AHL the authority to transfer its right to repayment under the note. The security instrument outlined the terms of the mortgage and defined several key terms including:

> (**B**) "**Borrower**" is ROBIN K. TOWNSLEY-DULONG AND DAN DULONG, WIFE AND HUSBAND[.] Borrower is the mortgagor under this Security Instrument.

> (**C**) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee under this Security Instrument.**

* * * * *

> **(D)** "**Lender**" is **Accredited Home Lenders, Inc.** . . . a
> Corporation organized and existing under the laws of the State of
> California[.]

(App. Vol. 2 at 47-48) (emphasis in original).[1]  The instrument also provided:

TRANSFER OF RIGHTS IN THE PROPERTY

> This Security Instrument secures to Lender: (i) the repayment of
> the Loan, and all renewals, extensions and modifications of the
> Note; and (ii) the performance of Borrower's covenants and
> agreements under the Security Instrument and the Note.  For this
> purpose, Borrower does hereby mortgage, grant and convey to
> MERS (solely as nominee for Lender and Lender's successors
> and assigns) and to the successors and assigns of MERS, the
> [Blossom Court Property.] . . . Borrower understands and agrees
> that MERS holds only legal title to the interests granted by
> Borrower in this Security Instrument, but, if necessary to comply
> with law or custom, MERS (as nominee for Lender and Lender's
> successors and assigns) has the right: to exercise any or all of
> those interests, including, but not limited to, the right to foreclose
> and sell the Property; and to take any action required of Lender
> including, but not limited to, releasing and canceling this
> Security Instrument.

(*Id*. at 49.)

---

[1] Several documents included in Davis's Appendix are mostly illegible, and we were required to access the documents via Odyssey to read them.  We nonetheless provide pinpoint citations to those documents in the Appendix to convey the precise document being referenced.

[3]     On May 20, 2016, CSL Community Association Inc. ("CSL"), the homeowners association for the subdivision where the Blossom Court Property is located, filed a complaint against the Dulongs under cause number 40D01-1605-PL-051 ("Cause 051"). CSL alleged the Dulongs were delinquent in their payment of dues and assessments. Consequently, CSL asserted that it possessed a lien on the Blossom Court Property, and CSL asked that its lien be foreclosed and the property sold at a Sheriff's sale. CSL later amended its complaint to include AHL as a defendant so that AHL could assert any interest or claims it had in the Blossom Court Property. CSL never named MERS as a defendant.

[4]     On October 3, 2017, CSL moved for permission to serve AHL by publication because CSL's previous attempts at service had been unsuccessful. The trial court granted CSL's motion, and CSL published notice in the North Vernon Sun for three successive weeks in December 2017. Neither the Dulongs nor AHL answered CSL's complaint, and CSL moved for a default judgment on August 15, 2018. The trial court granted CSL's motion and entered default judgment on August 21, 2018. The Jennings County Sheriff then conducted a Sheriff's sale, and Davis purchased the Blossom Court Property. The Sheriff's Deed was executed on February 28, 2020, and recorded on March 12, 2020. On May 16, 2020, Davis sold the Blossom Court Property to Samuel and Michelle Hadley.

On January 28, 2021, Bank and MERS recorded a corporate assignment of mortgage regarding the Blossom Court Property with the Jennings County Recorder. The Assignment stated:

> **Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA COPORATION, ITS SUCCESSORS AND ASSIGNS**
>
> **Assignee: DEUTSHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ACCREDITED MORTGAGE LOAN TRUST 2004-3 ASSET-BACKED NOTES**
>
> For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named assignee all interest under that certain Mortgage Dated: 7/30/2004, in the amount of $83,600.00, executed by ROBIN K. TOWNSLEY-DULONG AND DAN DULONG, WIFE AND HUSBAND to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 8/19/2004, Document # 2004004441 in JENNINGS County, State of Indiana.

(*Id*. at 66) (emphasis in original) (assignor and assignee addresses omitted).

On April 26, 2021, Bank filed the instant action under cause number 40D01-2104-MF-000004 ("Cause 004") against the Dulongs, Davis, and other entities

that might have had an interest in the Blossom Court Property.[2]  Bank alleged that the Dulongs had failed to meet their obligations under the adjustable rate note and mortgage and that they were in default.  Bank asked the court to enter judgment against the Dulongs and foreclose on the Blossom Court Property. Bank moved for summary judgment on September 19, 2022.  Bank asserted there was no genuine issue of material fact that the Dulongs defaulted and its interest was entitled to first priority.  Davis responded to Bank's motion on December 5, 2022, and asserted Bank's interest was extinguished by the default judgment in Cause 051.  Bank filed a reply on January 12, 2023, in which it asserted that MERS[3] was the mortgagee, and because CSL did not serve MERS in Cause 051, the trial court's decree in that case did not extinguish Bank's interest.

[7]     The trial court held a hearing on Bank's motion for summary judgment on June 2, 2023.  The trial court granted Bank's motion for summary judgment on July 20, 2023, and ordered the Blossom Court Property be sold at a Sheriff's sale. Davis subsequently filed a motion to correct error reasserting its argument in opposition to Bank's summary judgment motion, and the trial court denied Davis's motion.  Davis also filed a motion to stay the Sheriff's sale pending the

---

[2] The Dulongs and these other entities did not appear before the trial court and do not participate in this appeal.

[3] In its reply in support of its motion for summary judgment, Bank refers to the entity "Mortgage Electronic Services" as "MERS."  (App. Vol. 2 at 163.)  We presume that this is a scrivener's error and Bank intended to refer to Mortgage Electronic Registration Systems, Inc. as "MERS."

outcome of this appeal, and the trial court granted that motion on September 28, 2023.

## Discussion and Decision

[8]     Davis asserts the trial court erred in denying its motion to correct error because the trial court's entry of summary judgment in favor of Bank was contrary to law. We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. *Spaulding v. Cook*, 89 N.E.3d 413, 420 (Ind. Ct. App. 2017), *trans. denied*. An abuse of discretion occurs when "the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or is contrary to law." *Id.* In determining whether a trial court's order on a motion to correct error is contrary to law, we must often consider the standard of review for the underlying order. *Brewer v. Clinton Cnty. Sheriff's Off.*, 206 N.E.3d 1158, 1164 (Ind. Ct. App. 2023), *trans. denied*. Our standard of review following a trial court's order on a motion for summary judgment is well-settled:

> When we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. The moving party must show there are no genuine issues of material fact and [it] is entitled to judgment as a matter of law. If the moving party carries its burden, then the nonmoving party must present evidence establishing the existence of a genuine issue of material fact. In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party.

*Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014) (internal citations omitted).

[9]     Davis asserts that at the time CSL initiated its foreclosure action, AHL "was the real party in interest as the mortgagee," (Appellant's Br. at 9), and the trial court's decree of foreclosure in Cause 051 extinguished AHL's interest in the Blossom Court Property, such that there was no interest to transfer to Bank. In response, Bank asserts the facts of this case are closely analogous to those in *CitiMortgage v. Barabas*, 975 N.E.2d 805 (Ind. 2012), *reh'g denied*, and the decree of foreclosure in Cause 051 did not extinguish Bank's interest because the trial court in Cause 051 never acquired personal jurisdiction over Bank.

[10]    In *Barabas*, Shannon Barabas had two mortgages on her home in Madison County. *Id.* at 808. Barabas's first mortgage was through Irwin Mortgage Corporation ("Irwin") and her second mortgage was through ReCasa Financial Group, Inc. ("ReCasa"). *Id.* at 809-10. The Irwin mortgage stated: "This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee." *Id.* at 809. The mortgage also designated Irwin as the "Lender." *Id.* at 810. Barabas fell behind in the payments on her second mortgage, and ReCasa filed a complaint seeking to foreclose on her house. *Id.* ReCasa served both Irwin and Barabas in that lawsuit, but ReCasa did not serve MERS. *Id.* Irwin filed a notice in which it stated that it disclaimed any interest, and the trial court entered default judgment against Barabas and ordered that her property be sold at a Sheriff's sale. *Id.* at 810-11. The Sheriff's sale occurred in January 2009, and an

assignment of the Irwin mortgage to Citimortgage was recorded in the office of the Madison County Recorder on April 20, 2009. *Id*. at 811. Citimortgage then "filed a motion pursuant to Indiana Trial Rules 24(A) and 60(B) seeking to intervene in ReCasa's foreclosure lawsuit and requesting that the court modify its judgment to provide that the judgment granted to ReCasa Financial is subject to the mortgage now held by Citimortgage." *Id*. (internal quotation marks omitted). The trial court refused to modify its judgment. *Id*. at 811. A panel of this court affirmed that decision in a split decision, and Citimortgage appealed to our Indiana Supreme Court. *Id*. at 811-12.

[11] Our Supreme Court began its opinion by explaining why MERS was created and its role in the modern mortgage industry. *Id*. at 808. The traditional mortgage involved just a lender and a borrower. *Id*. "Lender, a bank, raised funds through customer deposits and loaned those funds out to Borrower. Lender retained both the mortgage and the promissory note until Borrower had paid his debt in full." *Id*. (internal citation omitted). However, the development of a secondary market for mortgages altered the nature of the traditional mortgage transaction and led to the creation of MERS:

> The change began in the 1970s with the invention of the mortgage-backed security, a financial instrument that allowed investors to trade mortgages in the same way that they traded stocks and bonds. First, a borrower works with a broker to obtain a loan from a lender, who receives credit from an investment bank to fund the loan. The lender then sells the loan back to the investment bank, which bundles it together with a few thousand others and divides the bundle into shares. These shares are sold to investors, who receive a certain amount of the

income that the bundle earns every month when borrowers make their mortgage payments.

This process, called "securitization," used to require multiple successive assignments, each of which had to be recorded on the county level at considerable inconvenience and expense to the investment banks involved. In the mid-1990s, seeking to ameliorate those evils, a consortium of investment banks created Mortgage Electronic Registration Systems, Inc. (MERS). MERS maintains a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States. MERS member banks list MERS as both "nominee" for Lender and as "mortgagee" on their mortgage documents. MERS member banks can then buy and sell the note among themselves without recording an assignment of the mortgage. In the event of default, MERS simply assigns the mortgage to whichever member bank currently owns the note, and that bank forecloses on the borrower.

*Id*. at 808-09 (internal citations, quotation marks, and footnote omitted). MERS was created to serve as a clearinghouse to essentially hold thousands of mortgages as various financial institutions traded interests in the mortgages among themselves.

[12] Because Citimortgage claimed its interest was assigned to it through MERS, our Supreme Court evaluated what interest Barabas's mortgage contract assigned to MERS. *Id*. at 813. The Court determined that the mortgage contract's reference to MERS as both "nominee for Lender" and "mortgagee" was ambiguous because the common definition of "nominee" referred to "[a] person designated to act in place of another, usu[ally] in a very limited way" and the common definition of "mortgagee" referred to "the mortgage creditor,

or lender." *Id.* at 813-14 (quoting *Black's Law Dictionary* 1149 & 1104 (9th ed. 2009)) (brackets in original). The two definitions conflicted because the Irwin mortgage document clearly indicated that Irwin was the lender and because agency law prohibits an entity – in this context, MERS – from serving as both agent and principal. *Id.* at 814.

[13] The Court therefore looked to other evidence of the parties' intentions in order to properly construe the ambiguous terms. *Id.* The Court noted that the contract granted MERS legal title over the interests Barabas granted to Irwin in the mortgage contract and among those interests was the right to foreclose and sell. *Id.* Thus, the Court concluded that MERS had a property interest in Barabas's house because "[f]oreclosure proceedings are initiated in the form of a lawsuit in Indiana, and the right to file a lawsuit is a 'constitutionally recognized property interest.'" *Id.* (quoting *Phillips Petroleum Co. v. Shutts*, 105 S. Ct. 2965 (1985)). The Court also noted that MERS's own rules of membership required MERS to "'forward to the appropriate Member or Members . . . all properly identified notices, payments, and other correspondence' related to mortgages . . ." *Id.* (quoting MERSCORP, INC., Rules of Membership, R. 2 § 6). In this way, MERS serves as an agent for service of process purposes for all its member banks regardless of which member bank holds the mortgage interest at the time, just as "a nonresident who drives a car in Indiana appoints the Indiana Secretary of State as his or her agent for service of process in any resultant tort claim[.]" *Id.* (citing Ind. Code § 34-33-3-1(b)). "Taken together, MERS's rights under the terms of the [Irwin]

mortgage and MERS's own rules indicate that the parties intended to designate MERS as an agent of the lender." *Id*. Moreover, while Irwin disclaimed its interest, the disclaimer was only effective as to Irwin and not the other MERS member banks. *Id*. at 815. "Thus, MERS's interest survived through its other principals, including Citimortgage." *Id*. Because Citimortgage did not have notice of the foreclosure proceeding, the Court held that the trial court lacked personal jurisdiction over it, and therefore, the judgment was void as to Citimortgage. *Id*. at 816. The Court reversed the trial court's ruling denying Citimortgage's motion to intervene and motion for relief from judgment and remanded "with instructions to grant the motion to intervene and amend the default judgment to provide that ReCasa took the Madison County property subject to Citimortgage's lien." *Id*. at 818.

[14] The factual similarities between *Barabas* and the instant case require that we reach the same result as our Indiana Supreme Court reached in that case. Like in *Barabas*, the security instrument in the instant case defined MERS as the "nominee for Lender and Lender's successors and assigns." (App. Vol. 2 at 48.) In addition, like in *Barabas* where ReCasa served Irwin but not MERS, 975 N.E.2d at 810, CSL served AHL in Cause 051 but not MERS. The default judgment in Cause 051 extinguished AHL's interest in the Blossom Court Property just as the disclaimer Irwin filed in *Barabas* extinguished Irwin's interest. *Id*. at 815. However, at the time default judgment was entered in Cause 051, MERS held the Blossom Court Property mortgage on behalf of all its member banks who were trading interests in the mortgage. The judgment in

Cause 051 did not extinguish the interests of those member banks because those banks did not have notice of the lawsuit. *See id.* ("Irwin's disclaimer would have been effective against MERS's rights only if no other MERS member bank had an interest in the mortgage. There is no evidence that was the case; on the contrary, Citimortgage, a MERS member, claimed an interest."). Had CSL served MERS, then all MERS member banks would have had notice of the foreclosure lawsuit, but CSL failed to serve MERS. Consequently, the foreclosure decree in Cause 051 is void as to Bank because the trial court in Cause 051 never obtained personal jurisdiction over Bank.[4] Therefore, we affirm the trial court's grant of summary judgment in favor of Bank and its subsequent denial of Davis's motion to correct error.[5] *See id.* at 816 (holding judgment in foreclosure action was void as to Citimortgage because the trial court never obtained personal jurisdiction over it).

---

[4] Bank also asserts in its brief that MERS was "the mortgagee" and "[a]s such, Indiana law required MERS to be named and served in the CSL foreclosure action." (Appellant's Br. at 11.) The Indiana Code requires a party seeking to foreclose on a mortgage to name the mortgagee as a defendant. *See* Ind. Code § 32-29-8-1 ("If a suit is brought to foreclose a mortgage, the mortgagee or an assignee shown on the record to hold an interest in the mortgage shall be named as a defendant."). However, our Indiana Supreme Court expressly held in *Barbabas* that MERS did not enjoy a statutory right to notice because calling it a "mortgagee" as that term is used in Indiana Code section 32-29-8-1 is a "bridge too far." 975 N.E.2d at 817. Given Bank's significant reliance on *Barbabas* in its brief, Bank's counsel was undoubtedly aware of this negative authority. However, Bank's counsel did not acknowledge it in its brief despite the fact that Indiana Rule of Professional Responsibility 3.3(a)(2) states: "A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]" Such conduct falls short of what we expect from attorneys who appear before us, and we wish to impress the importance of that duty on Bank's counsel.

[5] We recognize that Davis purchased the property at a Sheriff's sale and Indiana Code section 32-29-8-3 provides that a person who purchases property at a judicial sale without actual notice of an assignment that is not of record holds the property free and discharged of the lien. However, Davis asserts no argument that when it purchased the Blossom Court Property at a Sheriff's sale it lacked actual notice of the mortgage's assignment to MERS.

## Conclusion

Given the closely analogous fact pattern of the instant case to the facts presented in *Barabas*, we reach the same result as our Indiana Supreme Court did in that case. The trial court in Cause 051 did not have personal jurisdiction over Bank because CSL did not serve MERS, and therefore, the foreclosure decree entered in that case did not extinguish Bank's interest. We accordingly affirm the trial court.

Affirmed.

Vaidik, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Bradley K. Kage
North Vernon, Indiana

ATTORNEY FOR APPELLEE

J. Dustin Smith
Manley Deas Kochalski, LLC
Indianapolis, Indiana